**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO: 3:07-CV-253-RJC-DCK**

| | |
|---|---|
| EVANGELINE SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | ORDER |
| v. ) | |
| ) | |
| MICHAEL ASTRUE, ) | |
| ) | |
| Commissioner of Social Security. ) | |

**THIS MATTER IS BEFORE THE COURT** upon the "Plaintiff's Motion for Summary Judgment" (Document No. 20) and the Defendant Commissioner's "Motion for Summary Judgment" (Document No. 22). The Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on her application for disability benefits. This matter has been referred to the Magistrate Judge and is ripe for review. After careful consideration of the written arguments, the administrative record, and the applicable authority, the undersigned recommends that Commissioner's decision be **<u>affirmed</u>** for the following reasons:

## I. Background and Procedural History

Evangeline Smith ("Plaintiff") was born on February 5, 1964, has a college education, and is divorced with children. (TR. 17, 66, 160, 178). Plaintiff's past relevant work includes working as a telemarketer and order taker ("call center rep") for NASCAR. (Tr. 17, 176). Prior to that, she worked as a cashier at a school cafeteria. (Tr. 179). Although she developed pain in her right ankle due to a tendon tear ("rupture"), she was able to elevate her leg while sitting to perform her telemarketing work. Plaintiff indicated that the latter job was "temp work" and that she was not

1

needed for further temp work after the company hired a permanent worker in late 2003. (Tr. 17, 177).

On December 1, 2003, Plaintiff applied for a period of disability and Disability Insurance Benefits ("DIB"), alleging that she became unable to work on September 1, 2003, due to the tendon rupture in her right foot. (Tr. 64-67, 113). Thereafter, Plaintiff had successful surgery to repair the tendon in February of 2004 and insert a screw, followed by physical therapy. (Tr. 139, 157, 160). The screw was surgically removed in July of 2004. (Tr. 15).

Plaintiff's application was denied initially and on reconsideration. (Tr. 19-29). After a hearing at which a vocational expert testified, Administrative Law Judge Thomas R. King ("ALJ") found that the Plaintiff was able to do her past sedentary work as a telemarketer and order taker and therefore was not disabled within the meaning of the regulations. On November 21, 2006, the Appeals Council denied the Plaintiff's request for review of the decision (Tr. 4-6, 8, 163-169). The hearing decision is the final decision of the Commissioner, subject to judicial review. 20 C.F.R. §§ 404.955 and 404.98. The Commissioner acknowledges that the Plaintiff has exhausted administrative remedies. (Document No. 22, p. 2).

## II. The ALJ's Decision

To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled within the meaning of the Social Security Act. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). Under the Social Security Act, 42 U.S.C. § 301, *et seq.*, the term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months… ." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is or is not disabled. 20 C.F.R. § 416.920. At the first two steps of the process, the ALJ found that Plaintiff had not worked since her alleged onset of disability on September 1, 2003 and that Plaintiff had a "severe" impairment due to her posterior tibial tendon tear of the right foot. (Tr. 14 at Finding 2). The ALJ found that this impairment did not meet or equal the criteria for any impairments listed in Appendix 1, Subpart P of Regulation No. 4. (Tr. 15 at Finding 4). At the fourth step, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work. (TR 15 at Finding 5). The ALJ found that Plaintiff was able to perform her past work as a telemarketer and order taker. (Tr. 17 at Finding 6). The ALJ concluded that the Plaintiff therefore was not disabled and denied the claim.

### III. Standard of Review

The Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), limits judicial review of the Commissioner's final decision to: (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*).

"Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401; *see also, Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (defining substantial evidence as "more than a scintilla" and as "doing more than creat[ing] a suspicion of the existence of a fact to be established."). The reviewing court must not re-weigh the evidence or substitute its judgment for that of the Commissioner. *Hays*, 907 F.2d at 1456; *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986).

The Commissioner, not the court, has the responsibility to make findings of fact and to

3

resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456; *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case *de novo* when reviewing disability determinations."); *Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). If he Commissioner's decision was supported by substantial evidence, the Court must affirm, even if the Court would decide the case differently. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

## IV. Allegations

Plaintiff disputes the ALJ's findings that: 1) she did not have an impairment or combination of impairments that met or equaled a listing; 2) she retains the residual functional capacity ("RFC") for sedentary work; and 3) she was able to perform her past relevant work as a telemarketer and order taker. The Commissioner asserts that the ALJ's decision is supported by substantial evidence.

## V. Analysis

### A) ALJ's Finding that Plaintiff did not have an impairment or combination of impairments that met or equaled a listing

Plaintiff disputes the ALJ's finding that she did not have an impairment or combination of impairments that met or equaled the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Plaintiff contends that the evidence raised a real and substantial possibility that her impairment equaled a listing, thus the ALJ should have obtained a medical expert's opinion. (Document No. 21, pp. 6-7). The Commissioner maintains that the ALJ had no duty to obtain a medical expert's opinion because the evidence in the record established that equivalency was not

4

a possibility. (Document No. 23, p. 17).[1]

To establish equivalency, a claimant must present "medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (emphasis in original). Plaintiff alleges that there is a strong possibility that she met the criteria of section 1.02 of the listing. (Document No. 21, p. 7). Section 1.02 of the listing ("major dysfunction of a joint") is characterized by three elements: (1) gross anatomical deformity; (2) chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint; and (3) findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint. 20 C.F.R. Pt. 404, Subpart P, Appendix 1, § 1.02. In addition, the impairment must involve a major peripheral weight-bearing joint, such as the ankle, resulting in the inability to ambulate effectively. *Id* at § 1.02A.

As the Commissioner points out, Plaintiff inaccurately equates the x-ray confirming an osteophyte of the right ankle as establishing ankylosis of the ankle; some swelling of the sinus tarsi as establishing chronic pain and stiffness of the right ankle; and treating orthopedist Dr. W. Hodges Davis' instruction that Plaintiff should stand for only one hour, walk for only one hour, and elevate her legs for 2 hours in an eight hour workday as establishing Plaintiff's inability to ambulate effectively. (Document No. 21, p. 7). Plaintiff's mischaracterization of the evidence does not provide a basis for overturning the ALJ's decision.

The ALJ found that Plaintiff's status post-surgery on a posterior tibial tendon tear of the right foot constituted a severe impairment, but did not meet or equal one of the listed impairments in 20

---

[1]Disability Determination Services physician, Dr. William A. Robie, examined Plaintiff on April 15, 2004 and evaluated her RFC. He did not indicate that Plaintiff had an impairment that met or equaled a listing. (TR. 139 "Request for Evaluation of Medical Severity").

C.F.R. Part 404, Subpart P, Appx. I., § 1.02 (Tr. 14 at Findings 3-4). The medical evidence of record did not reflect a "gross anatomical deformity" or an impairment resulting in chronic joint pain or stiffness limiting motion of the right ankle. The ALJ reviewed the medical evidence, including the post-surgery notes of the treating physician. For example, in May of 2004, Dr. Davis noted that the Plaintiff was already wearing regular shoes, that her foot alignment was excellent, that her medial pain had resolved, that Plaintiff had "no tenderness to palpation...along the posterior tibial tendon," and only "slight tenderness" in the sinus tarsi area. (Tr. 15, 155). In July of 2004, Dr. Davis found that Plaintiff's tendon transfer was "functional" and that despite "some tenderness in her sinus tarsi," she was "currently ready for sit-down work." (Tr. 15, 157). After removal of the screw in Plaintiff's heel, Dr. Davis found in December of 2004 that the incision was "well-healed," that Plaintiff had "excellent" ankle mobility with only "mild discomfort" on her heel and was "otherwise without complaints." (Tr. 160). In addition, the medical record did not contain imaging evidence of joint space narrowing, bony destruction, or ankylosis of Plaintiff's right ankle.

Although Plaintiff's impairment involved a major peripheral weight-bearing joint (her right ankle), see 20 C.F.R. Pt. 404, Subpart P, Appendix 1, § 1.00F, the ALJ appropriately found that Plaintiff failed to show that she was unable to ambulate effectively. Section 1.00B2b explains that:

> Inability to ambulate effectively means an *extreme* limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. . . . To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school.

20 C.F.R. Pt. 404, Subpart P, Appendix I, § 1.00B2b (emphasis added). The evidence of record indicates that the Plaintiff had the ability to ambulate effectively. For example, the ALJ reviewed Dr. Davis's post-surgery treatment notes from March 31, 2004, indicating that Plaintiff "really

6

needs to get rid of the crutches" and that she could walk in "regular shoes." (Tr. 15, 154-55). Dr. Davis maintained that the Plaintiff could walk for one hour in an eight hour workday (Tr. 162), supporting the ALJ's conclusion that the Plaintiff could ambulate effectively. *See Shook v. Barnhart*, Civil Action No. 05-4107-JAR, 2006 WL 4080050, at *5 (D. Kan., Aug. 21, 2006) (explaining that limitations in the claimant's ability to walk were insufficient to establish that the claimant was unable to ambulate effectively as required by the listing criteria). The record contained sufficient medical evidence for the ALJ to make an informed decision regarding Plaintiff's impairment. *See, e.g., Viverette v. Astrue*, 2008 WL 5087419, *2-3 (E.D.N.C. 2008).

The ALJ also considered the Plaintiff's self- reported activities, including that she prepared meals (Tr. 185), vacuumed (Tr. 186), drove a car (Tr. 178, 185), went to church (Tr.185), and cared for her daughter (T. 185). Thus, Plaintiff's own statements tend to indicate that she could ambulate effectively. In sum, substantial evidence supports the ALJ's findings that Plaintiff's impairments did not meet or equal the listed criteria.

### B. The ALJ's Finding of Residual Functional Capacity

Plaintiff disputes the ALJ's finding that she retains the residual functional capacity ("RFC") to perform the full range of sedentary work. Social Security Regulations define "residual functioning capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). Sedentary work is defined as:

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). According to *Social Security Ruling* 83-10, "'occasionally' means occurring from very little up to one-third of the time." At the sedentary level of exertion, being on

7

one's feet is required occasionally. Thus, over an eight-hour workday in sedentary employment, periods of walking or standing should generally comprise no more than approximately two hours and periods of sitting should comprise approximately six hours.

On August 18, 2006, Dr. Davis opined that the Plaintiff could lift up to ten pounds frequently and lift eleven to twenty pounds occasionally. (Tr. 162). Dr. Davis also stated that over the course of an eight-hour workday, the Plaintiff should lie down/elevate legs for two hours, sit for four hours, stand for one hour, and walk for one hour. (Tr. 162). On several occasions, Dr. Davis indicated that the Plaintiff could perform a "sit down" job. (Tr. 157, treatment notes from July 2004 indicating Plaintiff was "ready for sit-down work" and "will be returned to full duty in approximately three months"); (Tr. 161 notes from July 2006 indicating that Plaintiff could do a "sit-down job").

The evidence of record does not support the Plaintiff's argument that she should lie down for two hours over the course of an eight-hour workday, but rather indicates that Dr. Davis intended for the Plaintiff to elevate her right leg for two hours when sitting. A "/" is used to separate two alternatives – lying down and elevating legs. Dr. Davis did not specify which alternative he intended to indicate on the Plaintiff's evaluation, but he subsequently instructed the Plaintiff to "elevate her leg two to three hours per day," indicating that he did not intend for the Plaintiff to lie down two hours per day. (Tr. 170). At no point in his treatment notes did Dr. Davis suggest that the Plaintiff needed to lie down rather than merely elevate her leg. (Tr. 142, 143, 145, 154, 155, 158, 160). Combining four hours of sitting with two hours of leg elevation, Dr. Davis' statements indicate that the Plaintiff is capable of sitting down for a total of six hours during an eight-hour workday, thus satisfying this requirement of sedentary work. (Tr. 162).

In addition, Plaintiff's own testimony reinforces the interpretation of Dr. Davis' recommendation as meaning the Plaintiff should elevate her leg rather than lie down. At her

administrative hearing, Plaintiff testified that she elevated her foot while sitting to alleviate discomfort, that she could stand for thirty minutes before needing to sit and elevate her foot and that she elevated her foot at a previous job while sitting. (Tr. 180-82).

The Plaintiff argues that she is unable to do the full range of sedentary work because Dr. Davis recommended that she should not bend, squat, crawl, or climb. (Tr. 162 checking box to indicate these activities were "not recommended"). According to *Social Security Ruling* 96-9p, "Postural limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work." The ability to stoop occasionally "is required for most unskilled sedentary occupations." *Id*. The ALJ did not specifically reference Dr. Davis' one-page 2006 Physical Capacities Evaluation, but did discuss Dr. Davis' treatment notes, some of which were part of the same exhibit as the 2006 Physical Capacities Evaluation, indicating that the ALJ was aware of and considered the evaluation. *See, e.g., Sanchez-Wentz v. Barnhart*, 216 F. Supp. 2d 967, 979 (D. Neb. 2002) (observing that although the ALJ's decision did not quote certain statements by the physician, "there is no requirement that he do so, and the fact that these statements were not specifically mentioned by the ALJ does not mean that he failed to consider them"); (Tr. 14-15, 17, 154, 162).

The ALJ also referenced two separate RFC physical assessments completed by Disability Determination Services ("DDS") physicians in 2004. The first assessment, completed on January 29, 2004, stated that in an eight-hour workday, the Plaintiff could stand/walk for a total of about six hours, sit for about six hours, and found that the Plaintiff had no postural limitations, such as limitations on climbing, balancing, stooping, kneeling, crouching, or crawling. (Tr. 124-25). The second assessment, completed on April 14, 2004, contains the same findings regarding the Plaintiff's

9

physical capabilities. (Tr. 131-38). The DDS physicians reviewed the medical records and assessed the Plaintiff's RFC as able to perform medium work. (Tr. 87, 130, 139).

After carefully considering the entire record, the ALJ indicated that although reports from the State Agency found the Plaintiff's RFC was "medium," he felt treating physician Dr. Davis' report following the Plaintiff's most recent surgery should be afforded greater weight in determining the Plaintiff's RFC. The ALJ found that the Plaintiff was able to perform the full range of sedentary work without any postural limitations. (Tr. 15, 17, 87, 130, 139). The responsibility for resolving conflicting evidence and determining an individual's RFC is reserved to the ALJ. *Hays*, 907 F.2d at 1456 (explaining that it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence).

Additionally, Plaintiff's argument about whether the ALJ gave the Physical Capacities Evaluation's statements regarding the Plaintiff's ability to bend, squat, crawl, or climb sufficient weight is irrelevant because at step four, the ALJ found that the Plaintiff was capable of performing her past relevant work as a telemarketer and order taker. (Tr. 17). "Bending, squatting, crawling, or climbing" are not significant requirements of this type of work. Plaintiff fails to explain how this alleged error undermines the ALJ's decision.

### C. The ALJ's Finding that Plaintiff could perform her past relevant work

Plaintiff disputes the ALJ's finding that she was able to perform her past relevant work as a telemarketer and order taker as she had performed the job in the past and as it is generally performed in the national economy. (Tr. 17). If the claimant is capable of either performing past relevant work as she performed it in the past or as employers generally require in the national economy, the ALJ will find that the claimant is "not disabled." *Pass v. Chater*, 65 F.3d 1200, 1207 (4th Cir. 1995); 20 C.F.R. 404.1520(f); S.S.R. 82-61; S.S.R. 82-62.

When determining whether the claimant can perform past relevant work as she performed it, the claimant is "the primary source for vocational documentation." SSR 82-62. The Plaintiff described her position as a telemarketer and order taker as a "sit down job" where she sat throughout an eight-hour workday and was able to elevate her leg while sitting. (Tr. 181-84). With regards to restrictions on Plaintiff's ability to bend, squat, crawl, or climb, Plaintiff never indicated that the position required her to bend, squat, crawl, or climb, thus potential postural limitations are not an issue. (Tr. 176-77, 180-185). The ALJ noted that Plaintiff did not leave her job as a telemarketer and order taker because of her alleged disability; rather, she was a temporary employee and was replaced with a full time employee. (Tr. 17, 176-77).

The *Dictionary of Occupational Titles* (*DOT*) describes how individuals perform a claimant's past relevant work in the national economy. The *DOT* classifies telemarketing as sedentary work, which does not preclude a telemarketer from elevating her leg while sitting. *See* DICOT # 299.357-014, 1991 WL 672624. The *DOT* also eliminates any concerns that potential postural limitations could prevent the Plaintiff from performing the job of telemarketer because it states that as performed in the national economy, the job of telemarketer does not require climbing, balancing, stooping, kneeling, crouching, or crawling. *Id*. Even if the ALJ gave controlling weight to Dr. Davis' opinions that the Plaintiff needed to elevate her leg for two hours in an eight-hour workday, the Plaintiff remains able to perform the job in the same manner as she performed it in the past and as it is generally performed in the national economy.

In conclusion, the Commissioner's decision denying disability benefits was based on substantial evidence. Plaintiff has not shown "good cause" pursuant to section 205(g) of the Act, 42 U.S.C. § 405(g), to warrant reversal or remand.

**IT IS, THEREFORE, RECOMMENDED** that:

1. The Commissioner's administrative decision should be **AFFIRMED**;

2. Defendant's Motion for Summary Judgment (Document No. 22) should be **GRANTED**; and

3. Plaintiff's Motion for Summary Judgment (Document No. 20) should be **DENIED.**

## VI. Notice of Appeal Rights

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(c), written objections to the proposed findings of fact and conclusions law and the recommendations contained in this memorandum must be filed within ten (10) days after service of same. *Snyder v. Ridenour*, 889 F.2d 1363, 1365 (4th Cir. 1989); *United States v. Rice*, 741 F.Supp. 101, 102 (W.D.N.C. 1990). Failure to file objections to this memorandum with the District Court constitutes a waiver of the right to *de novo* review by the District Court, *Snyder*, 889 F.2d at 1365, and may preclude the parties from raising such objections on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841, 845-46 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

Signed: July 23, 2009

David C. Keesler
United States Magistrate Judge